# United States District Court
# Northern District of Indiana
# Hammond Division

| | | |
|---|---|---|
| JAMES GONSALVES, JOHN GONSALVES, DADA, LLC, and SOUTH BEND REAL ESTATE HOLDINGS, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 3:10-CV-348 JVB |
| TIM CLEVELAND, In his Individual Capacity; and KAYLA DAWSON, In her Individual Capacity, | ) ) ) ) | |
| Defendants. | ) ) | |

**OPINION AND ORDER**

Plaintiffs in this case sued two Indiana excise officers, alleging civil rights violations under 42 U.S.C. §§ 1981, 1983, and 1985(3). The excise officers moved for a Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c).

**A. Background Facts**

Plaintiffs James Gonsalves and John Gonsalves are non-white American citizens who were born in Bangladesh. James owns Plaintiff DADA, LLC, and John owns Plaintiff South Bend Real Estate Holdings, LLC (SBREH). John owns the building and land located at 13261 Chippewa Boulevard, and SBREH leases this land and building to DADA. DADA runs Blue Jeans Bar and Grill at this location. Defendants Tim Cleveland and Kayla Dawson are Indiana excise enforcement officers. Cleveland supervises other officers, including Dawson.

During a high speed chase on January 9, 2010, at about 9:00 p.m., Shawn Devine crashed

into a police car and killed Mishawaka Police Officer James Szuba. Devine had a blood alcohol content well over the legal limit. On January 11, 2010, Dawson and other excise enforcement officers went to Blue Jeans and seized the video recorder system installed there. The video recorder was not returned to the plaintiffs for over five months, despite repeated request for its return.

On April 5, 2010, Cleveland, in an interview with WSBT[1], claimed that the footage from the recording system showed that Devine was at Blue Jeans shortly before the January 9 crash and suggested that Blue Jeans may have violated the law prohibiting bars from serving customers they suspect have already had too much to drink. As a result of these comments, Szuba's estate sued the plaintiffs on a liquor liability theory.

Plaintiffs were finally able to see the footage from the seized video recorder on June 22, 2010, as part of discovery in the Szuba lawsuit. The footage showed that the only people in the bar before 9:00 p.m. on January 9 were two cleaning persons, the bartender, and the bar's DJ, none of whom resemble Devine.

On June 23, 2010, there was a hearing before the local Excise Board. Dawson told the board that she could not say whether Devine was at Blue Jeans because of "the poor quality of the surveillance system and the low image." Plaintiffs could not show the footage to the Excise Board because it had not been returned to them. That same day, Cleveland told WSBT that officers were certain that, with the cooperation of Devine, they could prove he was at Blue Jeans. The local Excise Board voted to not renew Blue Jean's liquor license. The video recorder system was returned to DADA on June 25, 2010.

---

[1]Neither party identifies what WSBT is, but it is presumably either the television or radio station that uses those call letters. Both stations are located in South Bend, Indiana.

Plaintiffs also claim that Cleveland and Dawson's seizure of the video recorder, failure to return it, and false statements about what the footage showed were part of a conspiracy to deprive Plaintiffs of their civil rights.

Plaintiffs claim that Cleveland has taken many actions in the past which show his racial animus toward the Plaintiffs. They allege the following events as evidence of racial discrimination: When Cleveland first met John in 2003, he refused to shake his hand. On September 24, 2004, Cleveland and other officers raided Sports Locker, John's previous bar. During the raid, the officers disconnected the bar's video system, handcuffed John in front of customers and employees, and assaulted an employee. In 2006, Cleveland protested the transfer of the liquor license when James purchased Blue Jeans. Plaintiffs also claim Cleveland distorted facts when he made public statements and testified at liquor board hearings in an attempt to portray Plaintiffs in a bad light, and that he did not behave this way toward similarly situated white-owned establishments. Plaintiffs also claim that Cleveland cited their establishments for claimed violations but did not cite white-owned establishments for similar occurrences. When speaking to the media and others, Cleveland referenced citations against Blue Jeans but did not explain that charges where never brought by the Alcohol and Tobacco Commission. Cleveland also claimed that Plaintiffs "catered to criminals," which Plaintiffs take as a reference to the generally minority status of Blue Jeans' customers.

**B. Legal Standard**

The standard for deciding Rule 12(c) motions to dismiss is the same as that employed for 12(b)(6) motions. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While Rule 8 does not require "detailed factual allegations," it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).[2] As the Supreme Court has stated, "the tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1940 (quoting *Twombly*, 550 U.S. at 570). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id.* (citing *Twombly*, 550 U.S. at 570). The Seventh Circuit has determined that "'[p]lausibility in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not . . . . [T]he plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these thing have happened, not *did* they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (emphasis in original). The Seventh Circuit has also observed that "in many straightforward cases, it will not be any more difficult today for a plaintiff to meet that burden than it was before [*Twombly* and *Iqbal*]. A plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion

---

[2]In *Twombly* the Supreme Court "retooled federal pleading standards, retiring the oft-quoted [*Conley v. Gibson*, 355 U.S. 42, 47 (1957)] formulation that a pleading 'should not be dismissed for failure to state a claim unless it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief.'" *Killingsworth v HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618, (7th Cir. 2007).

4

was offered, that she applied and was qualified for it, and that the job went to someone else. That is an entirely plausible scenario, whether or not it describes what 'really' went on in this plaintiff's case." *Id.* At 404–405.

**C. Discussion**

**(1)** *Count I*

In Count I of their complaint, Plaintiffs claim that Defendants violated their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution by seizing the video recording system from Blue Jeans Bar.

Defendants argue that the seizure was authorized by state law, namely Indiana Code § 7.1-2-3-12, but the Court disagrees. This statute gives the Alcohol and Tobacco Commission "the power to seize alcohol, alcoholic beverages, malt articles, or any other personal property when the seizure is lawful under the provisions of this title." Ind. Code § 7.1-2-3-12(b). However, the Commission's power to seize personal property is limited to alcohol or tobacco products or the receptacles and containers that contain such products. *See* Ind. Code 7.1-2-5-6. Defendants have not shown that a video recording system is one of the items in which its owner has only limited property rights.

However, even at this early stage of the proceedings, it is apparent that only DADA and James can maintain the Fourth and Fourteenth Amendment claims. DADA may proceed under this claim because, as the owner of the video recording system, it had the expectation of privacy against unreasonable searches and seizures. James can proceed under this claim because the complaint alleges enough to suggest that he may have suffered some individual, direct injury as a

result of the Defendants' actions. But the complaint fails to state that either John or SBREH had any tangible interest in the video recording so as to validate their claims to the Fourth and Fourteenth Amendment protections. Likewise, none of the Plaintiffs have alleged a cogent reason for bringing the Fifth Amendment claim. Accordingly, the Court dismisses Plaintiffs' Fifth Amendment claims in their entirety and dismisses the Fourth and Fourteenth Amendment claims as to Plaintiffs John and SBREH only.

**(2)** *Count II*

In Count II of their complaint, Plaintiffs allege that Defendants violated their equal protection rights under the Fourteenth Amendment for using a prohibited consideration—race—in targeting them. The Court finds that, although Plaintiffs allegations of racial discrimination are scant at best, this issue is best left for summary judgment motions or jury determination. Accordingly, the Court denies Defendants' request to dismiss Count II of the complaint.

**(3)** *Count III*

In Count III, Plaintiffs allege substantive due process violations. However, "[w]hen a particular amendment [like the Equal Protection Clause] provides an explicit textual source of constitutional protection against a particular source of government behavior, 'that amendment and not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Eby-Brown Co., LLC v. Wis. Dep't of Agriculture*, 295 F.3d 749, 754 (7th Cir. 2002) (citing *Alrbight v. Oliver*, 510 U.S. 266, 273 (1994)). The behavior that Plaintiffs

complain of—being singled out on the basis of race—is more aptly considered an equal protection claim. Thus, the Court dismisses Count III of the complaint.

**(4)** *Count IV*

In Count IV of their complaint, Plaintiffs allege that Defendants took actions with the intent of discouraging others from doing business with them and depriving them of their rights to make contracts, in violation of 42 U.S.C. § 1981. Plaintiff DADA states a valid claim under this section because it alleges that Defendants' were racially motivated and for the purpose of discouraging potential customers from doing business with Blue Jeans. Additionally, Plaintiffs DADA and SBREH state a valid claim because the complaint contains enough information to infer that the contractual relations between them have been frustrated. However, such allegations are lacking as to Plaintiffs James and John. Accordingly, the Court denies Defendants' request to dismiss Count IV as to DADA and SBREH but grants the same request as to James and John.

**(5)** *Count V*

In Count V, Plaintiffs allege that Defendants conspired with each other and others to violate their civil rights in violation of 42 U.S.C. § 1985(3). There are two problems with this claim. First, Defendants are both Indiana excise enforcement officers, and both are employed by Indiana Alcohol and Tobacco Administration. As such, there cannot be a claim that they conspired with each other to violate Plaintiffs' rights for "a conspiracy cannot exist solely between members of the same entity." *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999). Second, Plaintiffs' bare bones conspiracy claim is an example of

"an unadorned, the-defendant-unlawfully-harmed-me accusation" that cannot survive a motion to dismiss. The Court grants Defendants' motion to dismiss Count V but the dismissal is without prejudice.

**(6)** *Count VI*

What Plaintiffs label as Count VI in their complaint is not actually a count, but a request for relief. As such, the Court does not need to consider it at this time.

**D. Conclusion**

The Court grants in part and denies in part Defendant's Motion for Judgment on the Pleadings [DE 19] as detailed above.

SO ORDERED on September 30, 2011

    s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge